**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                                      :     Chapter 11

In re:                                                 :

                                                     :    Case No. 12-36728

     Dynegy Inc.,                                 :

                                                            :

                                        Debtor.       :

                                                            :
----------------------------------------------------------------X

## MEMORANDUM DECISION DENYING DEBTOR'S MOTION TO ENFORCE THE CONFIRMATION ORDER

**A P P E A R A N C E S :**

White & Case LLP
1155 Avenue of the Americas
New York, NY 10036
        By:    J. Christopher Shore
                  Julia Winters
*Attorneys for the Dynegy, Inc.*

Lowenstein Sandler PC
65 Livingston Avenue
Roseland, NJ 07068
        By:    John Sherwood

Levi Korinsky, LLP
1101 30th Street, NW, Suite 115
Washington, DC 20007
        By:    Nicolas I. Porritt
*Attorneys for Steven Lucas, Lead Plaintiff*

**CECELIA G. MORRIS**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

       Dynegy Inc. ("Debtor") makes this motion to enforce this Court's Order Confirming the

Joint Chapter 11 Plan of Reorganization for Dynegy Holdings, LLC and Dynegy, Inc. (the

Confirmation Order"). Debtor argues that the amended complaint filed by Steven Lucas, the

lead plaintiff (the "Lead Plaintiff") in a securities litigation pending in the United States District

Court for the Southern District of New York ("District Court") violates paragraph 55(D) of the Confirmation Order. Because the Court finds that the Confirmation Order does not prohibit the Lead Plaintiff from filing an amended complaint, Debtor's motion is denied. The Court abstains from considering whether the individual causes of action violate the Confirmation Order in favor of District Court.

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate). The Confirmation Order grants this Court "exclusive jurisdiction over any matter: (a) arising under the Bankruptcy Code; (b) arising in or related to the Cases or the Plan; or (c) that relates to the matters set forth in Article XIV of the Plan." Conf. Order, Sept. 10, 2012, ECF No. 153. Similarly, the Order Overruling Lead Plaintiff's Preserved Objection states that "this Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order." Order Overruling Obj., Oct. 4, 2012, ECF No. 186.

## Background[1]

Debtor filed this chapter 11 on July 6, 2012. At the time of filing, a securities class action was pending in District Court, which alleged violations of the Securities Exchange Act by the Debtor and certain current and former officers, directors and shareholders of the Debtor (the "Securities Litigation"). On July 12, 2012, the Debtor filed a joint chapter 11 plan of reorganization of Dynegy Holdings, LLC and Dynegy, Inc. (the "Plan"). Plan, July 12, 2012,

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Debtor's Plan of Reorganization, which can be found at ECF No. 28.

ECF No. 28, Ex. 1.  On August 24, 2012, the Lead Plaintiff filed an objection to confirmation of the Plan.  Specifically, Lead Plaintiff objected to the Non-Debtor Releases that were outlined in the Plan.  On September 5, 2012, the Court held a hearing to consider confirmation of the Plan.  At that hearing, the Debtor and the Lead Plaintiff agreed to negotiate in an attempt to resolve the objection to confirmation.  The Plan was confirmed with the condition that if no agreement could be reached, the Court would hold a hearing to consider the Lead Plaintiff's objection at a later date.  The agreement between Debtor and the Lead Plaintiff was memorialized upon the record of the September 5, 2012 hearing and in paragraph 55 of the Confirmation Order.  *See* Hr'g Tr. 16-19, Sept. 5, 2012, ECF No. 154; Conf. Order 53-55.

Ultimately, the parties could not resolve the issue.  On October 1, 2012, the Court held a hearing on the Lead Plaintiff's objection to confirmation.  The Court overruled the objection to confirmation and found that the Non-Debtor Releases[2] applied to the Non-Optouts.[3]  Order Overruling Obj.  On November 5, 2012, the Lead Plaintiff filed an amended complaint (the "Amended Complaint") in the Securities Litigation.  Mot. to Enforce, Nov. 13, 2012, ECF No. 218, Ex. A.

On November 13, 2012, Debtor filed a motion to enforce the Confirmation Order in this Court, alleging that Lead Plaintiff's amended complaint included causes of action that were released through the Non-Debtor Releases.  Mot. to Enforce, ECF No. 218.  In support of this argument, Debtor points to the following paragraphs in the Amended Complaint:

> 100. To the extent permitted under the terms of the orders dated September 10, 2012 and October 1, 2012 entered by the Bankruptcy Court, as they may be

---

[2] Non-Debtor Releases is defined in paragraph 55(B) of the Confirmation Order as "the releases contained in Section 8.20 of the Plan (and all related provisions of the Plan that implement such releases, including injunction provisions)."  Section 8.20 of the Plan states "that nothing in this Section shall be construed to release any party from intentional fraud, willful misconduct, gross negligence, or criminal conduct . . . ."

[3] Non-Optouts is defined in paragraph 55(B) of the Confirmation Order as "members of the Putative Class who did not individually exercise their right to opt out of such Non-Debtor Releases but are alleged by the Lead Plaintiff to have opted out by virtue of the Lead Plaintiff's opt out notice."

> amended or modified following appeal or subsequent motion to the Bankruptcy Court, including, all those members of the proposed class who have already opted out from releases entered by the Bankruptcy Court, Lucas intends to bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Dynegy securities during the Class Period (the "Class"). Excluded from the Class will be Defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.
>
> 101. The members of the Class are so numerous that joinder of all members will be impracticable, since Dynegy has millions of shares of stock outstanding and because the Company's shares were actively traded on the NYSE. As of July 31, 2012, Dynegy had approximately 122 million shares issued and outstanding. While the exact number of potential Class members in unknown to Lucas at this time and can only be ascertained through appropriate discovery, Lucas believes that there are numerous members in the proposed Class and that they are geographically dispersed.

Amend. Compl., ECF No. 218, Ex. A. Debtor focuses on paragraph 101 of the complaint and argues that the members of the class are not numerous because only a limited number affirmatively opted out of the releases.

In his response, Lead Plaintiff argues that his amended complaint directly incorporates the confirmation order through the language of paragraph 100: "[t]o the extent permitted under the terms of the orders dated September 10, 2012 and October 1, 2012 entered by the Bankruptcy Court[.]". Resp. 3, 10-11, Dec. 11, 2012, ECF No. 235. Lead Plaintiff argues that the releases do not apply to claims for intentional fraud, willful misconduct, and gross negligence and that his class may continue and may be numerous as to those counts. *Id.*

Lead Plaintiff argues that Count I of its complaint is for intentional securities fraud and that the level of misconduct that is sufficient to establish secondary liability under Section 20(a) of the Act as alleged in Count II of the Complaint, is likely to place these claims beyond the scope of the Non-Debtor Releases. *Id.* at 10. Lead Plaintiff states that it has

appealed the Confirmation Order and sought a stipulation from Debtor's counsel to be permitted to file its amended complaint after a decision on his appeal of this Court's order. *Id.* at 4-5. Lead Plaintiff's request was allegedly denied and he argues that he had to amend his complaint in order to comply with the District Court's deadline for filing the Amended Complaint. *Id.* at 5.

Debtor replied to the Lead Plaintiff's opposition. Reply, Dec. 11, 2012, ECF No. 236. In its reply, Debtor argues that the Lead Plaintiff is precluded from raising any fraud related claims at all. Reply 2. According to Debtor, paragraph 55(D) of the Confirmation Order must be interpreted to mean that the Lead Plaintiff and the class cannot pursue causes of action based upon fraud. *Id.*

In its reply, Debtor argues that

> [i]t is important to understand the agreement that was struck. The parties agreed that Lucas's counsel would receive two additional weeks to raise its objections to the Plan, during which Dynegy would engage in good faith negotiations to settle the class claims. In exchange for Dynegy's commitments, Lucas's counsel agreed that it would ***give up the right to pursue claims on behalf of Non-Optouts in the Securities Litigation*** in the event that no settlement could be reached, it was unsuccessful in its Plan objections and it did not obtain a reversal on appeal or a stay pending appeal. That agreement was important to Dynegy because, otherwise, Lucas's counsel could split the action with respect to Non-Optouts by pursuing fraud-based claims now and, if it is successful on appeal (potentially years later), then pursue non-fraud-based claims on behalf of the Non-Optouts. ***Dynegy thus insisted that, unless Lucas's counsel was successful on appeal, it could not pursue claims on behalf of Non-Optouts***. That agreement was memorialized in Paragraph 55(D) of the Confirmation Order.

Reply 2-3 (emphasis added).

At the hearing December 14, 2012 hearing to consider this motion, Debtor argued, that the parties agreed to forego the prosecution of all claims but only until after the appellate process. Hr'g Tr. 77, Dec. 14, 2012, ECF No. 243 ("Whether or not those claims are released is not the issue. The issue, is, is the appeal still pending. With the appeal still pending, [a Non-Optout] may not be a party who is prosecuting that cause of action, period, the end. That's the

deal that was cut."). Lead Plaintiff disagreed with Debtor's characterization of the agreement introduced an email exchange between the parties into evidence. Debtor then entered the response email into evidence and the Court asked that the entire chain of emails be put into evidence.

The Court must first consider the meaning of paragraph 55(D) in order to determine whether Lead Plaintiff violated the Confirmation Order by filing the Amended Complaint.

### Discussion

The Debtor asks the Court to interpret a paragraph contained within the Confirmation Order. Despite the fact that the disputed paragraph is not contained within the Plan, a confirmation order should be interpreted together with the chapter 11 plan so that the goal of the plan is not subverted by "arbitrary enforcement of a confirmation order." *Davis Offshore, L.P. v. Davis Trust (In re Davis Offshore, L.P.)*, 644 F.3d 259, 268 (5th Cir. 2011) ("[A]llowing the order of confirmation to stand alone, separate and apart from the plan, in the interpretive process, would tempt parties to insert other provisions in the confirmation order that might not coincide with a plan and, on occasion, might not even comport with the Bankruptcy Code. The drafting of exculpatory clauses is particularly susceptible to such alterations, as the plan proponents will often seek broader liability protection than the Bankruptcy Code or this court allows, while an objecting party may not notice the provision until the eve of confirmation.").

When interpreting a confirmed plan, the principles of contract law apply. *Official Comm. of Unsecured Creditors v. Dow Corning Corp. et al. (In re Dow Corning Corp.)*, 456 F.3d 668, 676 (6th Cir. 2006); *see also Breeden v. Bennett, et al. (In re Bennett Funding Grp., Inc.)*, 220 B.R. 743, 758 (Bankr. N.D.N.Y. 1997) ("[T]he . . . Plan became a binding contract . . . and must be interpreted in accordance with general contract law."). "Under New York law, a written

contract is to be interpreted so as to give effect to the intention of the parties as expressed in the unequivocal language they have employed." *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d. Cir 1992). Extrinsic evidence should not be considered unless the intent of the parties is not clear from the contract itself. *Id.* When a term is clear and unambiguous, courts should not rewrite the term "under the guise of interpretation." *Id*. (internal quotation omitted). Nor should a court redraft a contract to accord with its instinct for the dispensation of equity upon the facts of a given case. *Id.* "[T]he entire contract must be considered, and all parts of it reconciled, if possible, in order to avoid an inconsistency." *Id.*

Paragraph 55(D) was not included in the original proposed confirmation order. Proposed Order, Aug. 31, 2012, ECF No. 132. It was added after the September 5, 2012 hearing on confirmation and was supposed to reflect the agreement made between the Debtor and the Lead Plaintiff in connection with his objection to confirmation. Paragraph 55(D) of the Confirmation Order states:

> To the extent it is determined by an order of this Court that the Non-Debtor Releases apply to the Non-Optouts as of the date of the Confirmation Hearing (and only to the extent it is and such determination has not been reversed or stayed pending appeal), the prosecution of the Claims and Causes of Action asserted in the Securities Litigation against the non-Debtor parties to such litigation may proceed only with respect to members of the Putative Class who individually opted out of the Non-Debtor Releases.

Confirmation Order 54-55.

When interpreting orders, the Court should look first to the plain meaning of the language of the order. When read as a free standing paragraph, the plain language of Paragraph 55(D) appears to enjoin all claims by the Non-Optouts regardless of the underlying theory: "the prosecution of the Claims and Causes of Action asserted in the Securities Litigation against the non-Debtor parties . . . may proceed only with respect to members of the Putative Class who

individually opted out of the Non-Debtor Releases." "Claims" and "Causes of Action" are defined terms in the Debtor's confirmation order. Both are defined broadly, and together the terms encompass all claims and causes of action that can be brought. The term "Claim" has the "same meaning as set forth in section 101 of the Bankruptcy Code."[4] "Causes of Action" is defined under the Plan as

> all claims, rights, actions, causes of action, liabilities, obligations, suits, debts, remedies, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages or judgments, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, foreseen or unforeseen, asserted or unasserted, arising in law, equity or otherwise.

Although Paragraph 55(D) suggests that the Lead Plaintiff is prohibited from prosecuting all causes of action, Paragraph 55(D) should not be interpreted in a vacuum without considering the entirety of the Confirmation Order and the Chapter 11 Plan. *See Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d. Cir 1992); *In re Davis Offshore, L.P.*, 644 F.3d at 268.

When reviewing the Confirmation Order as a whole, it is clear that the paragraph 55(D) is meant to prevent the Lead Plaintiff from pursuing only those claims covered under the Non-Debtor Releases and is not intended to bar all claims—even for a short period of time. Paragraph 55 is entitled "Lucas Objection" and is made up of seven separate paragraphs, all of which involve the Securities Litigation and the Lead Plaintiff's objection to confirmation. Paragraph 55(B) states:

> ***Notwithstanding anything else to the contrary in*** the Plan, ***the Confirmation Order***, or any findings or conclusions of the Court in connection therewith, the

---

[4] "The term 'claim' means—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." 11 U.S.C. § 101(5).

>confirmation and consummation of the Plan shall be without prejudice to the Lead Plaintiff's or DI's right to litigate in this Court . . . .

(emphasis added). Paragraph 55(B) continues:

>***No provision of*** the Plan, ***the Confirmation Order*** or any findings and conclusions of the Court with respect to or directly related to the Non-Debtor Releases shall be binding on Lead Plaintiff and the Putative Class in connection with the [securities litigation]."

(emphasis added). Paragraph 55(F) proclaims loudly:

>This settlement *shall not be evidence of*, *or be used by any party, as support for,* or opposition to, *any issue in connection with any subsequent proceedings to determine the applicability of the Non-Debtor Releases to the Non-Optouts*.

(emphasis added).

Debtor's reading of Paragraph 55(D) is easily contradicted by the language of Paragraphs 55(B) and 55(F). When paragraph 55(D) is read in context, it is clear that the parties did not intend for the agreement made on September 5, 2012 to affect the rights of the Lead Plaintiff in the Securities Litigation or any other litigation. The Confirmation Order cannot be interpreted to mean that Lead Plaintiff agreed to forego prosecution of all claims, whether forever or just until after the appellate process.

As the Fifth Circuit noted in *In re Davis Offshore, L.P.*, "[i]t is also not unusual for a plan to be modified before the confirmation hearing, yet the confirmation order, whether drafted by the parties or the court alone, might not reflect last-minute changes. An error in the confirmation order should not overcome the parties' negotiated deal." *In re Davis Offshore*, *L.P.*, 644 F.3d at 269. In order to prevent interpreting the Confirmation Order in a manner that is inconsistent with the parties' negotiated deal, the Court entered the email exchange between the parties into evidence.

The emails in evidence were written on September 6, 2012 and September 7, 2012, in the days immediately following the hearing on confirmation of the Plan. The emails contain an earlier draft of paragraph 55(B), which was written by Lead Plaintiff's counsel and included the following language: "Lead Plaintiff will not amend or seek to amend the Complaint in the Securities Litigation until a determination is made by this Court pursuant to (C) below." E-mail from Lead Plaintiff's counsel to Debtor's counsel (Sept. 6, 2012, 11:06 AM) (on file with Court). There was a disagreement over the draft and a later email from Lead Plaintiff's counsel states: "[W]e never agreed to essentially be stayed until the entire appellate process concludes if we are successful . . . ." Email from Lead Plaintiff's counsel to Debtor's counsel (Sept. 6, 2012, 3:21 PM) (on file with Court). That same email states that a call was to take place later in the day between Debtor's counsel and Lead Plaintiff's counsel. *Id.* The last email in the chain contains a new black-lined draft of the Confirmation Order language "based on [Lead Plaintiff's counsel's] discussion with [Debtor's counsel]. Email from Debtor's counsel to Lead Plaintiff's counsel (Sept. 7, 2012, 1:59 PM). In this draft, all language regarding amending the complaint has been deleted—presumably because the parties could not agree to this in their telephone conversation. *Id*. The Confirmation Order, as submitted, also contains no reference to prohibiting an amendment of the complaint.

That the earlier versions of the Confirmation Order language contained an explicit prohibition to Lead Plaintiff filing an amended complaint demonstrates that the parties chose to submit an Order that did not contain prohibitive language. As such, the Court must assume that the parties agreed to remove that language and came to a deal that did not contain any prohibition on filing an amended complaint.

***Agreement as Reflected on the Record of the Hearing***

Debtor's assertion that the Lead Plaintiff agreed to give up its right to litigate causes of action in the Securities Litigation also does not conform to the agreement as stated by the parties on the record of the September 5, 2012 hearing.  The agreement was described by Debtor's counsel as follows:

> [W]e have engaged the lead plaintiff and counsel in settlement negotiations regarding the underlying lawsuit, and we're hope[ful] that we can get to a substantive resolution of the claims. However, we didn't want to delay confirmation and we didn't want to hold up going forward with settlement discussions.
> So to achieve these objectives we've entered into a relatively simple agreement with the elite [sic] plaintiff.  Mr. Lucas is withdrawing his objection to the plan in order to continue the settlement negotiations with a full reservation of his rights to come back in and argue at a later point in time, if we don't get to a settlement, that the releases in the plan do not apply to a class that could be certified in the Silby's litigation.
> If that moment arises that issue would be decides by this Court, the parties have agreed that this Court would have exclusive jurisdiction over the issue, and corollary to the elite [sic] plaintiff's reservation of his rights the estate reserves all of its rights as set forth in our papers to oppose the relief that they seek, which is to be carved out of the plan releases and related provisions.
> So the deal here is again very simple, the plan would go forward, and presumably if the Court finds appropriate be confirmed, but that would occur without prejudice to Lucas coming back in at a later point in time if we don't get to a settlement of the lawsuit in arguing that the releases do not apply and that the related provisions to the plan do not impair the ability to go forward.
> And we're agreeing that the confirmation order of the plan, the Court's findings, et cetera, in connection with confirmation, again, if the plan is confirmed, would not be in any way prejudicial to Mr. Lucas' rights when he comes back in, if he comes back in.

Hr'g Tr. 16-17. Then, Lead Plaintiff's counsel added:

> Your Honor, Mr. Lauria has outlined the agreement that we've reached to defer the issue without prejudice and a full reservation of rights on both sides. . . . We intend to embody our understanding in a stipulation which will be provided to the Court over the next day or two, we just did not have time given everything else that was going on to put that together by this morning.
>
>  . . . .

>And in addition we're going to include language in the confirmation order that essentially outlines, with perhaps a bit more detail, the understanding that we've -- that we've reached with the debtor as Mr. Lauria has outlined.

Hr'g Tr. 18, 19. The Court "so order[ed]" the record. Hr'g Tr. 19.

No stipulation was ever sent to the Court and the Court did not have access to the email communications that occurred between the parties. The agreement that was placed on the record was the only evidence of an agreement between the parties that the Court was aware of prior to entering the Confirmation Order.

Based on the plain language of the Confirmation Order, the agreement as stated on the record, and the email exchange between the parties, the Court finds that the mere filing of the Amended Complaint did not violate the Confirmation Order. The Court now turns to the Debtor's argument that the causes of action contained within the Amended Complaint violate the Confirmation Order.

*Second Circuit Precedent*

On October 4, 2012, the Court entered an order overruling Lead Plaintiff's objection to confirmation and finding that the Non-Debtor Releases applied to the Non-Optouts. Those releases, however, do not prevent any party from bring a suit against a non-debtor party for "intentional fraud, willful misconduct, gross negligence, or criminal conduct." Plan 15 (quoting section 8.20 Releases by Creditors and Equity Interest Holders). The Second Circuit forbids nondebtor releases that grant "blanket immunity" to the nondebtor parties. *Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 140, 142 (2d Cir. 2005). A release gives less than "blanket immunity" if causes of action based upon theories of "gross negligence, willful misconduct, fraud, or criminal conduct" are carved out from the scope of the releases. *In re DBSD N. Am., Inc.*, 419 B.R. 179, 219

(Bankr. S.D.N.Y. 2009) ("No release is provided for gross negligence, willful misconduct, fraud, or criminal conduct, and the release covers only conduct in connection with the chapter 11 cases. The language of the exculpation clause substantially conforms to the language that has become standard in this Circuit"). The record indicates that the Debtor never intended to bind the Lead Plaintiff beyond what is allowed under Second Circuit precedent.

At the September 5, 2012 and October 1, 2012 hearings, the Debtor consistently stated that the Non-Debtor releases would not apply to willful misconduct, fraud, gross negligence or criminal liability. On September 5, 2012, Debtor's counsel stated:

> [I]mportantly, and unlike *Metromedia*, which I think is what the Second Circuit really has a problem with, we're not releasing anybody of intentional fraud, willful misconduct, gross negligence, or criminal conduct.
>
> . . . .
>
> A litigation like the Lucas litigation forces DI and DH to litigate these issues. If you're coming in and saying that an officer of DI who is an indemnified party --and again, we're only talking about indemnifiable acts, not fraud, intentional misconduct, willful misconduct or anything like that . . . .
>
> . . . .
>
> Again, not to address a claim for which the officer and director is independently liable, but rather is liable because that officer and director was acting as an officer or director of Dynegy Inc. or Dynegy Holdings in a manner which is otherwise indemnifiable. That is not willful, not fraudulent.
>
> . . . .
>
> Nothing in this section though shall be construed to release any party from intentional fraud, willful misconduct, gross negligence, or criminal conduct as determined by a final order or to release any party from any claim or cause of action which any person is a party to the Gas Co. facility or the Coal Co. facility.

Hr'g Tr. 33, 40. 42, 66-67.

On the record of the October 1, 2012 hearing, Debtor's Executive Vice President, General Counsel, and Chief Compliance Officer, Catherine Callaway, testified as follows:

> Lead Plaintiff's Counsel: "What about -- now, the releases under the plan, they don't cover things like gross mismanagement, intentional --
>
> Callaway: "Intentional fraud."
>
> Counsel: "-- fraud and something –"
>
> Callaway: "Willful misconduct, criminal conduct, yes."
>
> Counsel: "Right. Now, to the extent that there are allegations of that type the directors and officers will be subject to that type -- those types of claims following confirmation; isn't that right?"
>
> Callaway: "Yes, although I'm not aware of any such allegations, you know, nor do we believe that there are any legitimate allegations of that sort."
>
> Counsel: "But those claims would be able to proceed beyond –"
>
> Callaway: "That's true."
>
> Counsel: "-- notwithstanding the release, right?"
>
> Callaway: "Correct."

Because the Non-Debtor Releases do not release non-debtors from causes of action based upon gross negligence, willful misconduct, fraud, or criminal conduct, it is possible for the Non-Optouts to proceed with the Securities Litigation on this narrow basis. Likewise, Lead Plaintiff's class could to be larger than only those class members who affirmatively opted out of the release provisions of the Plan. Despite the numerous class of plaintiffs that may remain, the claims that they are permitted to bring remain limited to only those few causes of action that are beyond the scope of the Non-Debtor Releases contained in the Confirmation Order—those causes of action sounding in gross negligence, willful misconduct, fraud, or criminal conduct. In order to make a determination on whether or not the specific allegations of the Amended Complaint violate the Confirmation Order, this Court would have to parse through the complaint, which was filed in

District Court. The Court chooses to permissively abstain from determining what causes of action may violate the Confirmation Order in favor of the District Court.

Bankruptcy courts may exercise discretion to abstain in favor of another federal court. 28 U.S.C. § 1334(c) ("[N]othing in this section prevents a [bankruptcy] court in the interest of justice . . . from abstaining from hearing a particular proceeding . . . ."); *Chamberlain Grp., Inc., et al., v. Lear Corp. (In re Lear Corp.)*, 2009 WL 3191369, at *3 (Bankr. S.D.N.Y. Sept. 24, 2009). When determining whether to exercise discretionary abstention, bankruptcy courts consider the following factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which [non-bankruptcy] law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable [non-bankruptcy] law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing [non-bankruptcy] law claims from core bankruptcy matters to allow judgments to be entered in [non-bankruptcy] court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*In re Portrait Corp. of Am., Inc.*, 406 B.R. 637, 641-42 (Bankr. S.D.N.Y. 2009). Not all of these factors must be applied in making such a determination. *Id.* at 642. Although the bankruptcy court has wide discretion in deciding whether to abstain, the balance should be "heavily weighted in favor or the exercise of jurisdiction." *In re Lear Corp.*, 2009 WL 3191369, at *3; *In re Portrait Corp. of America, Inc.*, 406 B.R. at 642. The balance tips in favor of abstention in this case.

The Defendants in the Securities Litigation are non-debtors and the complaint alleges violations of securities law, not bankruptcy law. The only issue for this Court to decide is

whether or not the pending claims are covered by the Non-Debtor Releases.  Such a determination could easily be made by the District Court, which has the power to interpret the Plan and Confirmation Order.  *In re Wash. Mut., Inc.*, 2012 WL 4755209, at *4 (Bankr. D. Del. Oct. 4, 2012).  If the causes of action were not covered by the Non-Debtor Releases, the litigation would have no effect on the bankruptcy estate.  If the claims have been released through the Plan, the District Court would have the power to dismiss the complaint.

## Conclusion

For the foregoing reasons, The Debtor's motion to enforce the Chapter 11 Plan is denied. Whether the amended complaint contains claims that were released by the Chapter 11 Plan is an issue to be determined by the District Court in the Securities Litigation.   Lead Plaintiff should submit an order that is consistent with this decision

Dated: Poughkeepsie, New York
       February 15, 2013        /s/ Cecelia G. Morris
                                        CECELIA G. MORRIS
                                        CHIEF UNITED STATES BANKRUPTCY JUDGE